**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7                                   NOT FOR CITATION

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                               SAN JOSE DIVISION

11

12 | PIOTR J. GARDIAS,                                   No. C04-04086 HRL

           Plaintiff,                          Consolidated With:    C04-04768 HRL
13                                                                   C05-01242 HRL
                                                                     C05-01833 HRL
14    v.                                                             C06-04695 HRL

15                                              **ORDER DENYING DEFENDANT'S**
   SAN JOSE STATE UNIVERSITY,                  **"MOTION TO ENFORCE**
16                                              **SETTLEMENT AGREEMENT"**

17            Defendant.                        **[Re:  Docket No. 146]**
                                          /
18

19        On March 20, 2007, this court heard the "Motion to Enforce Settlement Agreement"

20   filed by defendant California State University.[1]  Plaintiff Piotr Gardias, proceeding *pro se*,

21   opposed the motion.  Upon consideration of the papers presented,[2] as well as the arguments

22   presented at the motion hearing, the court DENIES the motion.

23

24        [1]    Defendant advises that it was erroneously sued as "San Jose State
     University."
25

26        [2]    Pursuant to Civil Local Rule 7-3(c), defendant's reply was due no later than
     March 6, 2007.  However, the reply was not filed until a week later on March 13, 2007.
27   Additionally, Civil Local Rule 7-3(a) contemplates that all grounds upon which an
     opposition is based should be presented to the court in a single filing.  Here, after filing an
28   opposition brief, plaintiff subsequently filed two "Supplemental Declarations," as well as a
     "reply" brief, which were not specifically authorized under the court's Civil Local Rules.
     This court has accepted and considered all of the papers filed by the parties.  However, it
     does not condone the failure to comply with the court's local rules and warns the parties
     against future non-compliance.

United States District Court

For the Northern District of California

## I. BACKGROUND

This is a consolidated action for alleged employment discrimination filed pursuant to 42 U.S.C. § 2000e-5.  Plaintiff is employed by San Jose State University.  He claims that defendant (a) failed to promote him on the basis of his age and national origin; (b) retaliated against him for filing employment complaints; and (c) discriminated against him on the basis of an alleged disability.

On February 7, 2006, this court held a status conference.  At that time, the court suggested to plaintiff that he avail himself of the court's Assisted Settlement Conference Program, under which a volunteer attorney would be appointed to represent him solely for a settlement conference.  He agreed, and the court ordered it.

On August 25, 2006, the parties (including plaintiff's appointed Assisted Settlement Counsel) participated in a court-supervised settlement conference with Magistrate Judge Vadas. The court's docket indicates that a settlement was reached and placed on the record.  Defendant subsequently prepared a written "Settlement Agreement and General Release" and sent it to plaintiff.  However, plaintiff evidently changed his mind; and, on August 28, 2006 (apparently prior to his receipt of defendant's proposed written settlement agreement), he filed a letter requesting that the agreement be "cancel[ed]."  (*See* Cain Simon Decl., Ex. 2).  He asserted that "[t]his agreement is not good at all to Plaintiff."  (*See id*.).  On August 29, 2006, plaintiff's appointed Assisted Settlement Counsel was released from any further obligation to plaintiff.  A few days later, plaintiff filed another letter with the court confirming that he "will not change his mind and does not want to go forward with the settlement."  (*See id*.).

The court held a further status conference on September 12, 2006.  At that conference, defendant took the position that the August 25, 2006 settlement was enforceable; plaintiff vehemently disagreed.  Defendant stated that it would, within thirty days of the conference, file a motion to enforce that settlement.  This court refrained from setting a case management schedule pending resolution of defendant's anticipated motion.  Several months passed, however, and no motion was filed.  Accordingly, the court held another conference on January 9, 2007, at which time the court proceeded to set case management deadlines and trial.

United States District Court

For the Northern District of California

1    On February 7, 2007, defendant filed the instant motion. It argues that the August 25,

2   2006 settlement is a valid and enforceable agreement. Plaintiff contends that no final binding

3   agreement was ever reached.

## II.   LEGAL STANDARD

5    A court retains jurisdiction to enforce a settlement in a case pending before it. *See*

6   *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) ("It is well settled that a district court has the

7   equitable power to enforce summarily an agreement to settle a case pending before it"); *see also*

8   *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381 (1994) (jurisdiction over settlement

9   enforcement issues may be established by express retention of jurisdiction, or by incorporating

10   the terms of the agreement in a dismissal order).

11    To be enforceable, a settlement must meet two requirements. First, it must be a

12   completed agreement. *Callie*, 829 F.2d at 890-91. Second, both parties must have either agreed

13   to the terms of the settlement or authorized their respective counsel to settle the dispute.

14   *Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977).

## III.   DISCUSSION

16    Defendant argues that the settlement terms that were recited in open court on August 25,

17   2006 comprise a complete and final agreement. It says that under those terms, defendant is

18   obliged to pay plaintiff $22,377.00 in exchange for a full and final settlement of all of plaintiff's

19   claims against it. Further, it contends that the so-called "cooling off period" required under the

20   Age Discrimination in Employment Act ("ADEA")[3] either does not apply or was waived. For

21   his part, plaintiff makes numerous assertions as to why the August 25, 2006 settlement should

22   not be enforced. In essence, he asserts that he understood that only an executed written

23   agreement would be deemed final and binding.

24

25

26    [3]    Title 29 United States Code Section 626(f)(1)(G) provides that, in connection
with an agreement between an individual and his employer, the individual will not be
deemed to have knowingly and voluntarily waived any right or claim under the ADEA
27   unless, among other things, "the agreement provides that for a period of at least 7 days
following the execution of such agreement, the individual may revoke the agreement, and the
28   agreement shall not become effective or enforceable until the revocation period has expired."
29 U.S.C. § 626(f)(1)(G).

3

**United States District Court**

For the Northern District of California

1   The transcript of the August 25, 2006 proceedings in open court indicate that the terms

2   of the settlement, as recited by defense counsel,[4] were as follows:

3           As I understand [unintelligible], your honor, we've agreed with
            Mr. [Gardias] to a dismissal with prejudice of all his lawsuit.  In addition,
4           Mr. Guardias [sic] will provide us with a general release reflecting a full
            and final settlement of any and all claims he may have, whether
5           administrative, whether filed with the EEOC, or remaining unfilled, uh,
            and whether CSU is aware of them or not.  This would be a full and final
6           settlement of any and all claims he may have.  Uh, we further understand
            that Mr. Guardias [sic] has agreed to separate from employment with
7           CSU, to retire effective no later than September 1, 2006, that he agrees
            not to seek reinstatement or re-employment anywhere within CSU or its
8           affiliates, and that CSU will pay to Mr. Guardias [sic] a lump sum of
            $22,377.  And while we understand that he wishes to use this amount to
9           purchase additional service credit, uh, that money will be paid to him; it
            will be his money to use as he sees fit.  If he changes his mind, he can do
10          so; there are no strings attached to that money . . . and those are the terms
            of the agreement as I understand them.

11

12  (Cain-Simon Decl., Ex. 1 at pp. 2-3).  Additionally, it was agreed that plaintiff "would retire as

13  an employee [in good standing] with the assistance of . . . human resources . . .." and that the

14  sum to be paid by defendant was sufficient to purchase two years' retirement credits.  (*Id.* at pp.

15  3-4).  The court accepted the terms; and, when asked whether he agreed to be bound by the

16  terms, plaintiff stated, "Uh, yes."  (*Id.* at p. 5).  These terms do appear to be encompassed by the

17  written agreement prepared by defendant.  (*See id.*, Ex. 3).

18          Nevertheless, on the record presented, this court cannot conclude that the settlement

19  terms placed on the record on August 25, 2006 represents a completed agreement.  Defense

20  counsel confirmed that, as reflected in the August 25, 2006 transcript, she stated that defendant

21  "would also make this settlement *contingent on the execution of a document*, which would

22  satisfy the requirements of section 1542 of the California Civil Code . . .."  (*See* Cain-Simon

23  Decl., Ex. 1 at p. 4) (emphasis added).  Additionally, defense counsel confirmed that, in the

24  August 25, 2006 open-court proceedings, Donald Newman, one of the University's

25  representatives, confirmed that the settlement "is *subject to a – a final written settlement* that

26

27

28          [4]     Although the transcript does not identify most speakers by name, the colloquy
    indicates that it was defense counsel who orally recited the terms of settlement.

                                                    4

United States District Court

For the Northern District of California

1   contains all the terms, uh, required under State and Federal law to effectuate the general

2   release." (*See id.*) (emphasis added).

3          At oral argument, defense counsel seemed to suggest that these statements were meant

4   to convey that the execution of a final written agreement was merely a formality. However, her

5   assertions only lend further support to the conclusion that the August 25, 2006 settlement was

6   neither complete nor final. Here, counsel explained that defendant was to provide a written

7   agreement which "fleshed out" the settlement terms. She adds that the "only contingency" was

8   that defendant would not pay any money to plaintiff without an executed written settlement

9   agreement. Insofar as the record shows that there was never any signed written agreement, even

10  under defendant's interpretation of events, it would appear that settlement was still contingent

11  and not final.

12         Further, this court finds it unnecessary to determine whether the ADEA "cooling off"

13  period applies or was waived. Although defendant now contends that no "cooling off" period is

14  required, its proposed written agreement, in fact, expressly gives plaintiff the right of revocation

15  and further provides that the agreement would not be effective until the revocation period had

16  expired. It states, in relevant part:

17                          **3.13 <u>Effective Date of Agreement</u>**

18            Gardias may revoke this Agreement at any time during the period
          of seven (7) days immediately following the date on which he executes this
19        Agreement. This Agreement shall not become effective or enforceable until
          the expiration of this 7-day period and upon the execution of the Agreement
20        by all parties.

21  (*See* Cain-Simon Decl., Ex. 3 at p. 5). Thus, even assuming that plaintiff did not revoke the

22  settlement when he did, and assuming further that defendant's proposed agreement was

23  executed, the record before this court shows that plaintiff would retain the right to change his

24  mind, and the agreement would not go into effect or become enforceable, for up to seven days

25  after he signed it.

26         Defendant argues that this court is obliged to enforce the oral terms of the settlement as

27  read in open court and urges this court to follow *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1140

28  (9th Cir. 2002) and *Manning v. New York Univ.*, 299 F.3d 156, 163 (2d Cir. 2002) in which the

**United States District Court**

For the Northern District of California

1    oral terms of court-supervised settlements were upheld on appeal.  However, both cases are

2    readily distinguishable from the situation under consideration.  In *Doi*, the Ninth Circuit

3    concluded that "[a]ny question as to [plaintiff's] intent to be bound was answered when she

4    appeared in open court, listened to the terms of the agreement placed on the record, and when

5    pressed to answer as to whether she agreed with the terms, said 'yeah.'"  *Doi*, 276 F.3d at 1138.

6    Similarly, in *Manning*, the Second Circuit upheld the enforcement of an oral settlement

7    agreement read in open court, noting, "'[i]t is beyond a district court's discretion to alter the

8    terms of or to refuse to enforce a settlement agreement[], absent special circumstances, such as

9    a material breach of the agreement.'"  *Manning*, 299 F.3d at 164 (quoting *In re Air Crash*

10   *Disaster at John F. Kennedy Int'l Airport on June 24, 1975*, 687 F.2d 626, 629 (2d Cir. 1982)).

11   Indeed, it is true that "[a] settlement agreement may be binding in some circumstances, even if

12   it is an oral one."  *Harrop*, 550 F.2d at 1145.  However, unlike the instant case, in *Doi* and

13   *Manning* there apparently was no indication in the open-court proceedings that a binding

14   settlement would be contingent upon the execution of a written agreement.

15         Accordingly, upon the record presented, this court concludes that there was no complete

16   or final agreement between the parties on August 25, 2006.

17                                  **IV.  ORDER**

18         Based on the foregoing, IT IS ORDERED THAT defendant's "Motion to Enforce

19   Settlement Agreement" is DENIED.

20   Dated:    March 20, 2007

21                                  _____
                                    HOWARD R. LLOYD
                                    UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

**United States District Court**

For the Northern District of California

1    **A copy of this document will be mailed to**:

2    Piotr J. Gardias
     72 Floyd St.
3    San Jose, CA 95110

4         Pro Se Plaintiff

5    Mary Susan Cain-Simon
     CA State Attorney General's Office
6    1515 Clay Street, 20th Floor
     P. O. Box 70550
7    Oakland, CA 94612-0550

8         Counsel for Defendant

9    Dated:    3/20/07            /s/
                               Chambers of Magistrate Judge Lloyd

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7